You can stay where you are. Thank you, Your Honor. May it continue to please the court. I represent LeAnn Brock Miller in this case, and the Supreme Court several years ago made an accurate assessment about the state of criminal justice. Criminal justice today is for the most part a system of pleas, not a system of trials. And the right to the effective assistance of counsel has followed suit. Lafler and Fry both set forth standards that emphasized that criminal defendants are entitled to competent counsel in the negotiation of plea agreements. I think this case is an excellent example of what our system has become. To my knowledge, out of the 40-some defendants in this wide-ranging conspiracy, none appealed. Everybody pled guilty. This work is taking place in the district courts without a lot of review from higher courts. And so it's especially important that we make sure everybody is receiving the effective assistance of counsel when it comes to plea negotiations. You know, I have, I think, only one question for you, and it's this. What relief does she seek? If she wants to go to trial, what is the realistic result? She would likely, you know, she might be convicted. She would then lose any reduction in the acceptance of responsibility, and she'd be exposed to a sentence greater than the 10 years. I mean, I'm just asking. Yeah. So what we'd like, because it's the legal remedy available to us at this point, is to vacate the plea agreement and start over. Okay. The Hill v. Lockhart prejudice sort of standard is, would you go to trial? But the Lafler and Frye is, would you get a better outcome? And as we detailed in our brief, all of the co-defendants who were on this same count of the indictment with Ms. Brockmiller, almost all of them negotiated a term below 10 years. Ms. Brockmiller was criminal history category 6, correct? That's right. Is that true of other defendants as well? Oh, no. I'm sure there are distinctions between each of the defendants. What I would emphasize is she's the very bottom of the totem pole here. She gave the right to two other people who were going to go to Chicago to buy heroin in exchange for one gram of heroin for her  She's prepared to take the risk of going to trial, though, on the one kilogram plus charge. The government has told us that if she went to trial, the guideline range would be in the, looks like, say, 14 to 17, 18 year range. Right. She's prepared to take that risk? She's prepared to take that risk. I think that, as with the other 40-some defendants, before trial with a competent lawyer, she may be able to negotiate a better plea agreement. But the major factor, the participation in the conspiracy is a hard battle to win at trial. But the one kilogram of heroin is very hard to find evidence for that she would have participated in a conspiracy knowing the objective of that conspiracy involves more than a kilogram of heroin. Fifty-four grams, certainly. But out of all of the controlled buys in this case, I think the government maybe counts up to about 200 or 300 grams of heroin. Now, Mr. Henderson, the government implies in its brief that her involvement was greater and that she threatened to kill a co-conspirator. But I couldn't see much more than she was a minimally involved addict trying to gain heroin for personal use. But could we talk about that murder? Sure. Well, so they obtained a wiretap on, I believe, the main conspirator's phone. And basically did a dragnet then of everybody that person talked to. And on one of those recordings, there is talk where, I believe, my client says something to the effect of, this person who was just arrested, maybe she just signed a little death warrant or things like that. That was never litigated in the district court. It was unimportant in the 2255 proceedings. And her attorney never offered any defense to it. I can tell you what's not in the record, which we've sort of indicated in a footnote, which is that she was high on heroin at the time. She would certainly contest that there was any intention to inflict any sort of violence on anyone. And that fact, or the telephone call itself, could be evidence that she was more involved in this conspiracy than just being somebody who's trying to get a fix. But I don't think that shows beyond a reasonable doubt more than a deep involvement in the conspiracy. But no, Ms. Brockmiller denies actually intending or issuing a serious threat to kill somebody. That was never something that she intended to do from our perspective. Mr. Henderson, I confess to having wondered about your inclusion of a Wikipedia entry about Crawfordsville with its population without mentioning it's the home of Wabash College and the home of General Lew Wallace, author of Ben-Hur. Well, I've seen from the billboards too that Montgomery County, the best thing about it, there's no zoning. There's no what? There's no zoning. No zoning. So those are the billboards. But no, I was inspired by your example in a prior case about Brown County State Park, so I thought it would be beneficial for the reader to know about Crawfordville. Is it correct, I was looking at the plea colloquy where there seemed to be some confusion, and if I got this correct, please tell me if I'm wrong, the judge was trying to take the pleas of five defendants at the same time and did not have this defendant's plea agreement in front of her before the hearing? My understanding is that the plea agreement was delivered at the time of the hearing both to the judge and to my client. So that's one of the things about the admission to this telephone call. My client would not agree that she actually wanted to admit to that fact that's in the plea agreement. This was a messy, multi-person conspiracy that led to errors, and one thing the Sixth Amendment stands for is that sometimes the government, sometimes the court may make errors, and one of the protections we have against those errors is that you have a competent lawyer to represent you. The government made the initial mistake here in filing an 851 information based on a prior offense that was not a felony drug offense. It may have been an understandable mistake, but the Sixth Amendment is the protection against that mistake. This is appointed counsel. This is appointed counsel, right. Not from your office. Not from my office, of course not. But there are really very basic steps that counsel failed to take here that led to looking at a really draconian sentence that compelled my client to plead guilty. She didn't look at the statute that my client was charged with to see what a felony drug offense is. She didn't identify the right statute of conviction for the prior offense. She didn't therefore necessarily look up whether that conviction was a felony drug offense. And so there's no argument under law that was clear at the time. This was not categorically a felony drug offense and shouldn't have had the outsized effect that it had. Right. So, unless there are further questions, I'll save what time I have for rebuttal. Thank you. Thank you. Mr. Reitz. May it please the Court, Brian Reitz for the government. I'd like to start. I think Judge Rovner, you hit the nail on the head seeking to ask what relief Mrs. Brockmiller is asking for. And I think just that question shows that she can't show a reasonable possibility of a better result. As far as going to trial, she would risk, her guideline range would be 168 months to 210 months as charged. Even if, for the lesser included, it'd be 120 to 150 months. That's her guideline range. So, by hook or by crook there, the 120 months that she pled to would be a good deal. Can you tell me something that bothered me? The government argued that 10 years is a good deal in the brief, in the face of a life sentence. Yes, we think so. What evidence is there that a life sentence was ever a real possibility here? Well, I think, first of all, it's difficult to guess or speculate as to what sentence the district court judge would have imposed. However, that is the statutory range. And I think any defendant in that scenario is going to be concerned about the high end. One reason that every defendant pleads is risk mitigation, risk avoidance. So even if the life maybe wasn't the most likely, something well above 10, just a comparison, there are sentences of 420 months, 327, 300, 262, and down the line. So many defendants receive more stringent sentences than Ms. Brockmiller did. But, I mean, she was the absolute least guilty in this whole thing. The Indiana conviction, let's talk about that for a minute, clearly was not a categorical felony drug offense. And we now know that she wasn't even guilty of that offense. That means that the government's biggest bargaining chip in plea negotiations was a fallacy. Why isn't that enough to demonstrate both ineffective assistance and prejudice? This lawyer made serious errors. And those errors went to the very core of the plea agreement here. So we have not disputed that Mrs. Brockmiller's attorney made a mistake. I don't think that can be said to have tainted or overridden her voluntariness of the plea just because her sentence, as I started with, is within the range of the guidelines or the statute, regardless. And also, I would point the court to this court's precedence about predictions of sentences don't show deficiency. So even an attorney that... Those were, have we been saying that since Lafler and Frye? I think that Herlow is... That inaccurate predictions about, or inaccurate information about sentencing exposure does not matter for purposes of plea agreements? Well, I wouldn't go as far to say it doesn't matter, certainly. I think, and Herlow post-judge Lafler and Frye agreed, I wish I would have cited those cases in my brief, as Mr. Henderson points out. That being said, I think they get to the same point. A reasonable likelihood of a better result, I still don't know. I still think there's been no showing that is likely, considering her guideline range. And even removing the 851, her statutory range is 10 to life. And if you can prove the kilo, right? Yeah, even if we can't, and it's the lesser included, it's 5 to 40, and 10 is a pretty good deal on that. Because her guideline range, if she went to trial, and she was convicted of the lesser included, her guideline range would be 120 to 150. So even then, 120 is the very low end of her guideline. Can you tell us, Mr. Reitz, what the evidence would look like? I realize it's been several years. If you had to try this and go after the full kilogram, or more than a kilogram. So we have wiretaps between, admittedly not Mrs. Brockmiller, but we have wiretaps between other members talking about buying a kilogram of heroin. So in addition to all the individual sales that we have that are showed in the PSR. So that would start there. Moreover, I think going back to how you started your question, Judge Rovner, about Ms. Brockmiller's minimal culpability here. We disagree with that. I don't think. I think it's reasonable to say that minimally culpable people don't call the head of a conspiracy offering to execute a co-conspirator. And I know Ms. Brockmiller is saying, is trying to get around that, or allied that. But the fact of the matter is, we have a telephone call of her unilaterally on her own volition calling a person in prison who's leading this conspiracy and offering to kill another co-conspirator. So the interpretation there, the best interpretation, is that that shows she knows the extent of the conspiracy and is significantly involved. The more innocent interpretation, perhaps, might be that she knows the extent and hopes to join to a greater extent. Other than that, I don't think there is a beneficial interpretation to that whatsoever. And I'd like to return a little bit, Judge Hamilton, to your point. Yes, we are somewhat, this is years ago, and the reason the record is somewhat lacking in some of this is because nobody went to trial. I think that point actually helps us, that this was 40 defendants with 40 different lawyers, and none of them saw fit to go to trial because they saw that they didn't have a very good likelihood of success, and the plea was the best way to do it, as Ms. Brockmiller did. So this is somewhat, I guess, pointing at holes in a painting that exists unfinished because of the lack of trial. How long has she been in custody, do you recall? She pled in 2014. She was indicted, what, in 2012, I think. I'm not certain about that. I think her, I looked on the BOP's website, I think her expected release is 2021. I believe that's right. Is it really realistic that the government would go to trial with this woman with her, you know, looking for a gram, you know, in a charge? Let me start, Your Honor. I think the premise of that question is based on us agreeing with her lack of culpability, and we vehemently do not agree that that's where she's at. As to whether we would go to trial, yes. If the remedy here, if this is remanded, I suppose we would offer the same 10-year sentence, and if that was rejected, we would go to trial. And she would face more stringent guidelines, she would face the exact same statutory range. So yes, we would. To the Laffler and Frye, we are not prepared to offer a better plea than the 10 years, which is the statutory minimum, again, of what we charged her with. And to the lower end of even the lesser included, the deal, the beneficial deal that we gave her. With that, if there are no further questions, I'm sure everybody's about ready for lunch, and we'll rest on our brief. Thank you. Thank you, Counsel. Your Honors, I mean no disrespect to my friend, and certainly understand prosecutorial discretion. In this case, Gregory Hart pled guilty to the same count, got time served. Jermaine Coleman pled guilty to the same count, got time served. Joseph Johnson, 18 months, same count. Jeremy Johnson, 48 months. Stacey Cooper, 41 months. Audra Eckman, 24 months. Haley Burrell, 48 months. To suggest that the government is not willing to offer a plea agreement in this case either reeks of vindictiveness or just doesn't reflect the record in the case. I would expect the Department of Justice to offer the same consideration to my client as it did to all of the other clients in this case. Everybody didn't plead guilty because they saw the strength of the evidence. They pled guilty because they got plea agreements. They got deals. The criminal justice system is a system of pleas. And- They might have had competent lawyers. If Ms. Brockmiller had a competent lawyer, she would probably not be in prison today. She would have gotten an agreement to maybe five to 40 years, let the judge decide the sentence. She doesn't have a lengthy criminal record, I guess. She really doesn't. She's got a criminal record that- She's a criminal record six. She isn't anymore because this conviction has been vacated. But it's all consistent with low-level crimes to feed an addiction. It's things like burglary or possession of syringes. Those sorts of things. Shoplifting. Shoplifting, exactly. Yeah. So, you know, it may be a plea that falls on deaf ears and this court can't do anything about it. But I certainly hope that the Department of Justice really looks at this case and affords my client the same consideration that it gave to the other defendants in this case. Thank you. Thanks to both counsel. Thank you. Case is taken under advisement. Everybody can go to lunch.